**MARS EQUIPMENT CORPORATION, an Illinois Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 74 C 3576.

United States District Court, N. D. Illinois, E. D.

Sept. 13, 1977.

Edward Kaplan of Kaplan & Kaplan, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., Michael Von Mandel, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff brought this action to recover excise taxes levied under Section 4181 of the Internal Revenue Code, 26 U.S.C. § 4181. Both plaintiff and defendant have moved for summary judgment. We will grant summary judgment for the defendant.

Plaintiff imports and sells antique guns and replicas of antique guns (hereinafter referred to as "antique guns"). Under Section 4181 of the Internal Revenue Code, an excise tax of 11 per cent is imposed upon the sale of "firearms" by an importer. Treasury Regulation § 48.4181–2(c) defines "firearms" as "any portable weapons, such as rifles, carbines, machine guns, shotguns,

or other fowling pieces, from which a shot, bullet, or other projectile may be discharged by an explosive." Plaintiff has stipulated that the antique guns it sold were capable of firing a projectile (Stipulation ¶ 10); plaintiff concedes that the guns fall within the regulation's definition of a "firearm." (Plaintiff's Reply Brief on Plaintiff's Motion for Summary Judgment). The sole issue before the court is whether Treasury Regulation § 48.4181–2(c) is valid. Because there are no material facts in dispute, this action is ripe for summary judgment.

■ Under I.R.C. § 7805(a), the Secretary of the Treasury is empowered to "prescribe all needful rules and regulations" for the enforcement of the Internal Revenue Code. It is well settled that "as 'contemporaneous constructions by those charged with administration of' the Code, the Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.'" *Bingler v. Johnson,* 394 U.S. 741, 749–50, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969). It is with this standard in mind that we assess plaintiff's challenge to the validity of Treasury Regulation § 48.4181–2(c).

■ Plaintiff's primary contentions are that the regulation is inconsistent with the purpose of Section 4181 and with the language of 18 U.S.C. § 921(a)(3). Plaintiff argues that because Congress allocated the revenues raised under Section 4181 to projects designed to restore the wildlife in this country (16 U.S.C. § 669 et seq.), Congress intended to tax only those firearms which are used by sportsmen in hunting wild animals. We disagree. It is clear from the legislative history that the purpose of Section 4181 was to raise revenues for the Treasury, which was severely strained in the depression years. *See* S.Rep.No.665, 72nd Cong.; 1st Sess. *reprinted in* 75 Cong.Rec. 1085 (1932). These revenues were not used for wildlife conserva-

tion. *See* discussion in 75 Cong.Rec. 7229–7230. In 1937, when Congress enacted the Wild Life Restoration Act (also referred to as the Pittman-Robertson Act) allocating revenues raised by taxing firearms to a wildlife restoration fund, Congress gave no indication that it was thereby amending the 1932 Act to tax only firearms used in hunting. Consequently, we see no inconsistency between Section 4181 and the regulation which defines firearms broadly enough to include "non-sporting" firearms as well. We cannot infer from the decision to "earmark" those funds for wildlife restoration [1] a legislative intent to amend Section 4181 to limit the tax to "sporting" firearms.

■ Plaintiff further argues that Congress' decision to exempt antique guns and their replicas from the provisions of the Gun Control Act of 1968, 18 U.S.C. § 921 et seq., indicates a similar intention to exempt those guns from Section 4181. There is no basis for this argument. The Gun Control Act was intended not "merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). Congress' intent was to

> halt the growing number of crimes in which guns were used to inflict or threaten bodily harm. Congress found it a matter of material concern to make firearms less readily available to juveniles, criminals, addicts, mental defectives, armed groups who would supplant public authorities, and others considered likely to put them to illegitimate uses. The weapons primarily aimed at were guns, especially cheap handguns being imported from abroad, surplus military weapons, unfit for sporting purposes, being dumped in this country, and rifles and shotguns, "the chosen weapons of the sniper."

---

1. Plaintiff argues that hunters are the beneficiaries of the wildlife restoration projects and thus should be the only contributors to the fund. We are aware of no legal requirement that the taxpayer be the direct beneficiary of a tax. This argument would be better addressed to the legislature than to the court.

*United States v. Posnjak,* 457 F.2d 1110, 1115 (2d Cir. 1972) (citation omitted). Given this purpose, it is obvious why Congress exempted antique guns and their replicas from the provisions of the Gun Control Act—a belief that antique gun collectors are not likely to use their guns "to inflict or threaten bodily harm." However, as we discussed earlier, Section 4181 has a completely different purpose—to raise revenues for the federal treasury.[2]

 Finally, plaintiff contends that the regulation is unreasonable and vague because, while the definition encompasses stud guns and flare guns, the Secretary of the Treasury has decided that the regulation does not apply to those instruments. The regulation specifically states that "firearms means any portable *weapons . . .* from which a . . . projectile may be discharged by an explosive" (emphasis supplied). Stud guns and flare guns are not weapons within the ordinary understanding of the term and thus should not properly be considered firearms under the regulation. Antique guns and their replicas from which a projectile may be discharged by an explosive are weapons within the ordinary understanding of the term. The regulation is an attempt to supply the definition that Congress omitted. The definition is prima facie proper, comporting with the ordinary understanding of "firearms," *cf. Bingler v. Johnson,* 394 U.S. at 749–751, 89 S.Ct. 1439, and is sufficiently clear to overcome a vagueness challenge.

Accordingly, defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied. Judgment will be entered in favor of the defendant.

---

2. Similarly, we are not persuaded by plaintiff's argument that treatment for antique firearms in customs laws and regulations differing from that accorded other firearms necessitates the removal of the excise tax on firearms. Those laws have different purposes from that of Section 4181.